IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Keith J. Shultz,                          :

          Plaintiff,                      :

     v.                                   :     Case No. 2:16-cv-0655

Commissioner of Social Security,:     JUDGE GEORGE C. SMITH
                                                Magistrate Judge Kemp
          Defendant.                      :

REPORT AND RECOMMENDATION

I. Introduction

     Plaintiff, Keith J. Shultz, filed this action seeking review
of a decision of the Commissioner of Social Security denying his
application for supplemental security income.  That application
was filed on September 24, 2012, and alleged that Plaintiff
became disabled on September 1, 2009, which date was later
amended to March 25, 2013.

     After initial administrative denials of his claim,
Plaintiff was given a hearing before an Administrative Law Judge
on January 27, 2015.  In a decision dated March 9, 2015, the ALJ
denied benefits.  That became the Commissioner's final decision
on May 10, 2016, when the Appeals Council denied review.

     After Plaintiff filed this case, the Commissioner filed the
administrative record on September 12, 2016.  Plaintiff filed a
statement of specific errors on October 20, 2016.  The
Commissioner responded on February 16, 2017.  Plaintiff filed a
reply brief on March 2, 2017, and the case is now ready to
decide.

II. Plaintiff's Testimony at the Administrative Hearing

     Plaintiff, who was 42 years old as of the date of the first
administrative hearing and who has his GED, testified as follows.
His testimony appears at pages 40-70 of the administrative
record.

Plaintiff began by discussing his work history. He had not worked since March, 2013, but was hired as a cook at a family restaurant in 2012, a job that lasted for only eight hours. Before that, he had not worked since 2008 when he spent several weeks doing inventory at Wal-Mart stores. He worked in a carpet warehouse before that as well as in a paper factory, where he operated a large machine that rolled paper for steel factories. He had some other machine operator jobs as well and also had loaded and unloaded trucks.

Next, Plaintiff testified about his various impairments. He had problems with his right shoulder, which he attributed to the surgeon's having cut a nerve during surgery which took place in 2013. He could no longer lift anything heavier than a bottle of water and could not reach overhead or behind himself. His hand was always cold and his fingers went numb. On his left hand, he was missing the pointer finger, which affected his grip. He had pain in his low back as well. He had undergone two rounds of physical therapy but it did not help. On a daily basis, Plaintiff would lie in a chair with a pillow under his shoulder to ease the pain.

Plaintiff also testified that he was receiving mental health counseling. He was getting medication as well. He had trouble making decisions and he had mood swings several times per week. He had trouble sleeping at night due to pain. He did not drive and did not get along well with people. He was not able to do household chores. His days consisted of lying on a couch and watching movies, although he had difficulty following the storyline. He did not believe he could do even a sedentary job because of the pain in his shoulder, and he could sit for only 45 minutes at a time and stand about the same. He could walk 100 yards before getting short of breath.

### III.  The Medical Records

The pertinent medical records are found beginning at page 365 of the record.  They can be summarized as follows.  The Court will focus primarily on records relating to Plaintiff's condition at or after the time of his alleged onset of disability, which is March 25, 2013.

Without going into detail, there are records showing that well prior to that date, Plaintiff was hospitalized twice for psychiatric symptoms and was diagnosed with bipolar disorder; that he was treated for COPD and back pain; and that he had undergone surgery on his right shoulder but continued to complain of pain in that joint.  He was also seen by Meredith Finsley, a psychological assistant, for an assessment for Belmont County Job and Family Services, who concluded that his general cognitive ability was in the borderline range and that testing showed a severe level of depression and anxiety.  His GAF as of the date of that assessment (August 10, 2011) was rated at 40.  (Tr. 365-464).

On December 20, 2012, Dr. Padamadan performed a consultative physical examination.  Plaintiff had been taking Percocet for five years for pain management and said no other medication relieved his back pain.  He reported having rotator cuff surgery at age 15 and having problems with his shoulder.  However, the range of motion of that shoulder was normal.  His back examination was also normal.  Dr. Padamadan concluded that Plaintiff's upper extremity functions were intact and that he could sit, stand, walk, and lift and carry up to fifty pounds. (Tr. 545-47).

On January 10, 2013, Plaintiff was evaluated by David Bousquet, a psychologist.  At that time, he was taking both Depakote and Seroquel.  He said he had been receiving mental health treatment since age 14.  Plaintiff reported low energy and

-3-

motivation as well as being very moody and anxious. Mr. Bousquet observed that Plaintiff's affect was at times depressed and at times anxious. He was also easily distracted. The diagnoses included bipolar disorder and a prior substance abuse history. Mr. Bousquet rated Plaintiff's GAF at 50 and believed Plaintiff could process information similar to individuals with average intellectual functioning; would have difficulty maintaining attention, concentration, persistence, and pace; would have difficulties conforming to social expectations in a work setting; and would have difficulty responding to work stress. (Tr. 558-65).

Plaintiff underwent surgery on his right shoulder on March 25, 2013. (Tr. 595). Post-surgical studies showed no abnormalities. However, Plaintiff continued to report pain in the shoulder joint, and he was referred to a pain clinic. He had pain with his physical therapy and was given some SI joint injections. He also continued with psychiatric medication management. In July, 2014, he reported that his pain medications were working and that the injections had also caused some improvement, although his back pain had started to return. (Tr. 835-36).

The records were also reviewed by state agency physicians and psychologists. On December 30, 2012, Dr. Delphia concluded that Plaintiff could do a range of medium work with some environmental limitations. (Tr. 100-02). The subsequent reviewer, Dr. Prosperi, said that Plaintiff could do light work with both environmental and postural restrictions, including only occasional overhead reaching with the right arm. (Tr. 116-118). The first reviewing psychologist, Dr. Rivera, thought that Plaintiff could do work where job duties were static and changes could be easily explained, that he could have only limited, superficial contact with others, and that he could perform

repetitive 3-4 step tasks where a supervisor or co-worker was available occasionally to explain or redirect his effort. (Tr. 102-03). Dr. Voyten concurred with this evaluation. (Tr. 118-20).

## IV. The Vocational Evidence

Dr. Larry Ostrowski was called to testify as a vocational expert at the administrative hearing. His testimony begins at page 70 of the administrative record.

Dr. Ostrowski first testified about Plaintiff's past work. He said that Plaintiff's jobs included industrial truck operator, slitting machine operator, braiding machine operator, and machine packager. Those jobs ranged from unskilled to skilled and were done at either the light or medium exertional levels.

Dr. Ostrowski was next asked questions about a hypothetical person with Plaintiff's age, education, and experience who could work at the light exertional level. The person would be unable to reach overhead or lift with the right arm and could rarely reach with that arm in any direction. Additionally, the person could not crawl or climb ladders, ropes, or scaffolds, and could only occasionally stoop. The person also could not tolerate concentrated exposure to vibration and respiratory irritants and could not be exposed to hazards such as dangerous moving machinery or unprotected heights. Lastly, the person could do only simple, routine tasks performed in a low stress setting defined as requiring no assembly line work, no fast-paced production requirements, no more than occasional changes in the work routine or work setting, little independent decision-making or goal setting, and with no contact with the public and only occasional interaction with supervisors and coworkers. Dr. Ostrowski testified that such a person could not do Plaintiff's past work. However, that person could be employed as an office helper, marker, and mail clerk at the light exertional level, and

as a surveillance system monitor, document preparer, and table worker at the sedentary exertional level.

Dr. Ostrowski was also asked how much tolerance there was for being off task. He said that an individual can be off task for up to ten percent of the workday. Also, an individual could be late for or miss work up to twice a month before facing consequences.

After the hearing, Plaintiff submitted a report from a different vocational expert, Dr. Mona Robinson. Dr. Robinson concluded that none of the jobs identified by Dr. Ostrowski, or any other light jobs, would be available to someone who had the restrictions posed in the first hypothetical question, because all such jobs require reaching with the right arm more than ten percent of the workday. The same was true of the sedentary jobs identified, except that the surveillance system monitor job could not be done without contact with the public, so that requirement, rather than a reaching requirement, eliminated that job. (Tr. 850-51).

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 14-24 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff had not engaged in substantial gainful activity since his alleged amended onset date. Going to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe physical impairments including degenerative joint disease of the right shoulder with chronic rotator cuff tendinopathy and instability, status post Bankart fixation surgery, degenerative disc disease of the lumbar spine at L5-S1, chronic obstructive pulmonary disease, mild right carpal tunnel syndrome, and bipolar disorder. The ALJ also found that these impairments did not, at

any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff could work at the light exertional level.  However, he was not able to reach overhead or lift with his right arm and could rarely reach with that arm in any direction.  Also, he could not crawl or climb ladders, ropes, or scaffolds, could only occasionally stoop, could not tolerate concentrated exposure to vibration and respiratory irritants, and could not be exposed to hazards such as dangerous moving machinery or unprotected heights.  Finally, he could perform only simple, routine tasks performed in a low stress setting defined as requiring no assembly line work, no fast-paced production requirements, no more than occasional changes in the work routine or work setting, little independent decision-making or goal setting, and with no contact with the public and only occasional interaction with supervisors and coworkers.  That being so, the ALJ concluded that Plaintiff could not perform his past relevant work.  However, relying on the vocational testimony, the ALJ found that Plaintiff could do certain light unskilled jobs including office helper, marker, and mail clerk, and that such jobs existed in significant numbers in the regional economy and the national economy.  That finding is inconsistent with a determination of disability.  Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

VI.  <u>Plaintiff's Statement of Specific Errors</u>

In his statement of errors, Plaintiff raises these issues: (1) the ALJ did not properly account for all of Plaintiff's mental and physical limitations when determining his residual functional capacity; (2) the ALJ's evaluation of the opinion evidence was internally inconsistent and precludes meaningful

review; and (3) the ALJ improperly relied on the inconsistent and unreliable testimony of the vocational expert. These issues are evaluated under the following legal standard.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

A. Residual Functional Capacity

Plaintiff's first statement of error takes issue with the ALJ's decision both to give great weight to the opinions of the state agency physicians and psychologists while, at the same time, both declining to adopt their opinions in full and failing

to explain why certain limitations found in those opinions were omitted from the ALJ's residual functional capacity finding. As examples, he notes that both psychologists said that Plaintiff would need occasional redirection and explanation of tasks from a coworker or supervisor, and that any changes in the work setting would have to be easily explained. The RFC does not mention either limitation. The same is true for a physical restriction on pushing and pulling with the right arm, a limitation found in Dr. Prosperi's opinion but, again, not included in the RFC finding. Plaintiff also points out that both psychological reviewers limited him to superficial interactions with others, but the ALJ changed that limitation to "occasional" and excluded the public from that limitation, again without explanation. Without those explanations, he asserts that the Court needs to remand the case in order to insure both that the ALJ was actually aware of the details of the reviewers' opinions and that she had a substantial basis for disregarding them.

The Commissioner contends, in turn, that the ALJ's residual functional capacity assessment, even though it does suffer from the deficiencies identified by Plaintiff, "adequately accommodated all Plaintiff's limitations." Memorandum in Opposition, Doc. 17, at 6. For example, the Commissioner argues that restrictions on reaching with the right arm include restrictions on pushing and pulling; that a limitation to simple, routine work encompasses the limitation that changes be easily explainable; and that although occasional contact with others is not the same as superficial contact, none of the jobs which the ALJ found Plaintiff capable of performing involved any significant interactions with supervisors or coworkers.

Plaintiff clearly has the better of this argument. The Commissioner is essentially asking the Court to make a vocational evaluation without any evidence to support it. In a workplace where the basic tasks are simple and routine, are changes to

-9-

those tasks necessarily "easily explainable"?  The Court does not
know, and the record is silent.  Do jobs like the ones identified
by Dr. Ostrowski involve only superficial interaction with
supervisors and coworkers, or are the occasional interactions
with those groups of people more than superficial?  Nothing in
the record answers this question.  Can someone who is limited in
using his arm to reach still push or pull with it?  If the Court
were to attempt to answer these questions, it would not only be
speculating as to the correct answer, it "'would propel [our
Court] into the domain which Congress has set aside exclusively
for the administrative agency,' if [the Court] were to determine
the jobs available to [Plaintiff] based upon h[is] limitations."
Simpson v. Comm'r of Social Security, 344 Fed.Appx. 181, 192 (6th
Cir. Aug. 27, 2009), quoting SEC v. Chenery Corp., 332 U.S. 194,
196 (1947).

Further, this Court has previously held that an ALJ's
failure to explain why certain limitations endorsed by a state
agency reviewer whose opinion is purportedly adopted by the ALJ
are not folded into the RFC finding is an error of law justifying
remand.  That is particularly true when the ALJ provides no
explanation for the omission, a failure which makes it difficult,
if not impossible, for the Court to review the ALJ's reasoning
process and which may well violate Social Security Ruling 96-6p,
which was in effect at the time of the administrative decision.
See Bledsoe v. Comm'r of Social Security, 2011 WL 549861 (S.D.
Ohio Feb. 8, 2011).  Even if the failure is "a simple oversight,"
see id. at *5, it is an error, and not a harmless one.
Consequently, Plaintiff's first statement of error fully supports
an order remanding the case.

B.  Evaluation of Mr. Bousquet's Opinion

In his second statement of error, Plaintiff faults the ALJ's
analysis and evaluation of the opinion of Mr. Bousquet, the
examining psychologist.  The primary thrust of his argument is

that the ALJ gave great weight to the opinions of the reviewing psychologists, who, in turn, gave great weight to Mr. Bousquet's opinion, but the ALJ gave that latter opinion only some weight. In addition to this perceived inconsistency, Plaintiff argues that the ALJ arbitrarily decided to base her evaluation of Plaintiff's mental functional capacity on the higher of the two GAF scores which Mr. Bousquet assigned, when the standard practice is to credit the lower score. The Commissioner counters that the ALJ was well within her discretion to choose to put more weight on the higher score.

Neither of these issues require a remand. The ALJ explained that she gave only some weight to Mr. Bousquet's report because it lacked precision in defining exactly the extent of Plaintiff's mental limitations. That comment is true. While the state agency reviewers gave it additional weight, they also interpreted it to mean that Plaintiff's limitations were the ones they found, and the ALJ was entitled to rely on that interpretation. The distinction here is simply semantic; had the ALJ given great, rather than only some, weight to Mr. Bousquet's report, she still would have been able to rely on the way in which the state agency reviewers construed his findings. The same rationale supports a finding that, to the extent that the GAF score of 50 which Mr. Bousquet assigned to Plaintiff's symptoms (the functional GAF was 55) suggested greater limitations than those found by the state agency psychologists, the ALJ was entitled to make findings in accordance with their opinions. Additionally, the ALJ noted, not unreasonably, that her job was to assess Plaintiff's maximum capabilities, so choosing to place some reliance on the more favorable GAF score was not, on this record, an unreasonable decision. Consequently, the issue raised in the second statement of error should be resolved in the Commissioner's favor.

### C. The Vocational Testimony

Plaintiff's final argument is that the testimony of Dr.

Ostrowski, although it supported the ALJ's findings, was unreliable. Plaintiff bases his assertion on the fact that Dr. Ostrowski was asked to assume that Plaintiff was ambidextrous when, in fact, he is right-hand dominant, and that the evidence supports the latter finding. Plaintiff contends that Dr. Ostrowski's testimony might have been different if he did not make this assumption, and that the testimony that the jobs identified could also be performed by a left-hand dominant person with an assist from the right arm or hand is not helpful because Plaintiff is unable to use his right arm or hand for that task. Plaintiff also argues that the ALJ made incorrect assumptions about his ability to do light work and about how he could use his left hand notwithstanding the loss of his index finger, and did not resolve the conflict in the vocational testimony.

On this last point, there was a conflict created when Plaintiff submitted evidence from his own vocational expert. However, the ALJ did explain why she credited Dr. Ostrowski's testimony, stating that Dr. Robinson simply indicated a disagreement with Dr. Ostrowski's conclusions but offered no support for her competing interpretation of the evidence. (Tr. 24). That type of resolution of a conflict in the evidence is well within the ALJ's purview.

As to the other parts of this statement of error, the limitation which the ALJ described on the use of the right arm was for reaching only. Plaintiff testified that he could use his right hand for tasks like buttoning and zippering. Dr. Ostrowski also specifically testified that he took the right arm restrictions into account when determining that Plaintiff could do the jobs he identified (Tr. 78-79). He also clearly testified that all of the jobs could be done with one arm and an assist from the other. (Tr. 80). Since he had been asked to assume the reaching restrictions imposed by the ALJ, Dr. Ostrowski's testimony could reasonably be interpreted as consistent with

those restrictions.  The ALJ was therefore entitled to rely on his expertise.

It should be noted, however, that should the case be remanded on the basis of Plaintiff's first statement of error, that will likely require additional vocational evidence.  That would also provide the ALJ with an opportunity to clarify the record with respect to the various issues relating to Plaintiff's use of his right arm, even in an "assisting" capacity, and also with respect to how the combination of that restriction and the absence of one finger on his left hand fit into Plaintiff's ability to do any jobs - either the same ones or others - which might also be consistent with the revised residual functional capacity finding to be made on remand.  Any issues raised by Dr. Robinson's report, including any issue about whether the job of surveillance system monitor requires interacting with the public, could be resolved in this way.

VII.  <u>Recommended Decision</u>

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g), sentence four.

VIII.  <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the

-13-

magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge